## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### (Civil Division)

_____
                                               )
**JUANITA KENNEDY,**                           )
2123 Creeks Edge Lane                          )
Waldorf, MD 20601,                             )
                                               )
        Plaintiff,                             )        Civil Action No. _____
                                               )
        **v.**                                 )
                                               )
**THOMAS J. VILSACK, Secretary**               )
**United States Department of Agriculture**    )        **Jury Demanded**
1400 Independence Avenue, S.W.                  )
Washington, DC 20250,                          )
                                               )
Serve: Loretta E. Lynch                        )
Attorney General for the United States         )
c/o Designated Representative                  )
United States Department of Justice            )
950 Pennsylvania Avenue, N.W.                   )
Washington, D.C. 20530-0001                    )
                                               )
Serve: Channing D. Phillips, United States     )
Attorney for the District of Columbia          )
c/o Designated Representative                  )
United States Attorney's Office                )
555 Fourth Street, N.W.                        )
Washington. D.C. 20530                         )
                                               )
        Defendant.                             )
_____)

## COMPLAINT

**COMES NOW** Plaintiff, Juanita Kennedy (hereinafter "Plaintiff" or "Ms. Kennedy"), by and through her undersigned counsel, and sues Thomas J. Vilsack, Secretary, of the United States Department of Agriculture (hereinafter "USDA" or "Defendant"), and for cause of action states, as follows:

## NATURE OF THE CASE

1.      Plaintiff Juanita Kennedy (hereinafter "Plaintiff" or "Ms. Kennedy") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*., and 42 U.S.C. § 1981a for relief from Defendant's unlawful discrimination of Ms. Kennedy on the basis of her race (African American), engagement in protected EEO activity, and being subjected to a hostile work environment during the course of her employment with the Department of Agriculture.

2.      Defendant USDA discriminated against Plaintiff on the basis of her race (African American), engagement of protected EEO activity, and subjected her to a hostile work environment during the relevant time period.

## PARTIES

3.      Plaintiff is currently domiciled at 2123 Creeks Edge Lane, Waldorf, MD 20601.  Plaintiff is a resident of the State of Maryland and a United States citizen. At all relevant times, Plaintiff was an employee of the Department of Agriculture.

4.      Defendant Secretary Thomas J. Vilsack ("Defendant" or "Secretary Vilsack") is being sued in his official capacity as the Secretary for the United States Department of Agriculture ("the Agency").

5.      Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of its employment, under the theory of *Respondeat Superior*.

## JURISDICTION

6.      This Honorable Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

7.      This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

## VENUE

8.      Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of the Defendant, an Agency of the federal government that operates within the District of Columbia, and occurred in the District of Columbia. 28 U.S.C. § 1391. Venue is further proper in this district because there is no other district in which this action may otherwise be brought. *Id*.

## EXHAUSTION OF REMEDIES

9.      Plaintiff has exhausted all of her administrative remedies.

10.     On or around March 18, 2014, Plaintiff timely contacted the Agency's EEO office and filed an informal EEO complaint with the Agency's EEO office. See Agency Case No. APHIS-2014-00369.

11.     On or around May 29, 2014, Plaintiff timely filed a formal EEO complaint with the Agency's EEO office, which was investigated by the Agency. See Agency Case No. APHIS-2014-00369.

12.     After the investigation of her EEO complaint, Plaintiff timely requested a Hearing before the United States Equal Employment Opportunity Commission ("EEOC").  See EEOC No. ___.

13.     On July 5, 2016, the Administrative Judge remanded the case to the Agency for a Final Agency Decision (FAD).

14.     On or around August 1, 2016, the Agency mailed Plaintiff's Final Agency Decision, which provided her with 90 days from receipt of the final decision to file her lawsuit.

15.     Plaintiff hereby timely filed her action within 90 days after receipt of the Final Agency Decision.

## FACTS

16.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

17.     At all times relevant to the claims made herein, Plaintiff was an employee of the Department of Agriculture, in Plant Protection and Quarantine, Plant Health Programs, in the Phystosanitary Issues Management (PIM) unit.

18.     Ms.  Kennedy was hired by the Agency in or around 2007.

19.     From 2012 to April 2014, Plaintiff's first line supervisor was Matthew Rhoads (Caucasian), Associate Executive Director, GS-15.

20.     In June 2013, Plaintiff was competitively selected for the position of Supervisory Resource Management Specialist, GS-0301-09/11, with promotion potential to a GS-11 position.

21.     Prior to starting in the position, Plaintiff was not provided with training as a new supervisor.

22.     In this position, Plaintiff supervised five employees.

23.     One of the five employees was an employee named Lynekia Wiley, Administrative Support Assistant, GS-07.

24.     Ms. Wiley had previously been supervised by Stacie Cain (Caucasian, female) against whom Ms. Wiley filed an EEO complaint.

25.     Plaintiff was informed when she accepted the position that, in all likelihood, she was being set up to fail.

26.     Specifically, management was putting Ms. Wiley (African American) under Plaintiff's supervision so that if Ms. Wiley filed another complaint and now named Plaintiff (another African American), it would not carry as much weight as the complaint against Ms. Cain (Caucasian) carried.

27.     Plaintiff was further informed that management anticipated Ms. Wiley filing a complaint against Plaintiff prior to Plaintiff even starting as Ms. Wiley's supervisor, but did nothing to help Plaintiff or address Ms. Wiley's behavior.

28.     On August 14, 2013, after noticing numerous inconsistencies with Ms. Wiley's timesheet, Plaintiff asked Ms. Wiley to correct her timesheet and to submit leave requests to cover the absences.

29.     Ms. Wiley had numerous days where she had taken an extended lunch break and did not properly account for the time on her timesheet.

30.     In response, Ms. Wiley sent Plaintiff an e-mail requesting Plaintiff "model" for her in real time, step-by-step how she wanted the timesheet to appear in the timesheet software, WebTa.

31.     Plaintiff agreed and schedule a meeting to train Ms. Wiley.

32.     However, on August 27, 2013, Ms. Wiley sent Plaintiff's supervisor, Mr. Rhoads, an e-mail stating that she was unable to attend Plaintiff's meeting and that she was "overwhelmed by the concept of being forced to be in the same space as [Plaintiff]." Ms. Wiley continued that she was scared to eat or drink anything because of a "choking" feeling, that she was "ill" over attending the meeting, and would much rather go home.

33.     Mr. Rhoads responded to Ms. Wiley that the assignment was within the scope of her duties and that he would set up a conflict resolutions meeting so that Ms. Wiley and Plaintiff could resolve their issues.

34.     However, Plaintiff, until this point, had been unaware of any issues other than informing Ms. Wiley of the inconsistencies with her timesheet.

35.     Mr. Rhoads did not provide Plaintiff with any guidance or support to assist Plaintiff in dealing with the situation.

36.     On September 10, 2013, Ms. Wiley sent another e-mail to Mr. Rhoads falsely accusing Plaintiff of sending Ms. Wiley threatening notes.

37.     Ms. Wiley specifically stated that Plaintiff "made her sick."

38.     On September 19, 2013, Michael Watson, Assistant Deputy Administrator, sent out an e-mail to the entire unit and stated that there was not a policy on timesheet audits and that there would not be such a policy.

39.     On October 3, 2013, Plaintiff issued Ms. Wiley a Letter of Caution for eight (8) instances of inconsistencies on her timesheet.

40.     Plaintiff had drafted the letter months prior for entries that had occurred in June and July 2013; however, Employee Relations took several months to create the final letter.

41.     Plaintiff presented the letter to Ms. Wiley, explained the reasons for the Letter of Caution, and encouraged Ms. Wiley that there would be team building events coming up soon for the staff.

42.     In the presence of Mr. Rhoads, Ms. Wiley stated, "being in your presence makes me physically ill."

43.     Mr. Rhoads never responded, nor offered guidance or support to Plaintiff when dealing with Ms. Wiley.

44.     Plaintiff sent Mr. Rhoads an e-mail requesting that Ms. Wiley be informed that her comments were inappropriate and that Ms. Wiley be removed from Plaintiff's supervision.  Mr. Rhoads only replied, "No."

45.     On December 2, 2013, Plaintiff sent Ms. Wiley an e-mail regarding an Internet Shipping Charge for $466.40.

46.     Plaintiff had been made aware by Keith Miller that Ms. Wiley had been allegedly using the UPS account for personal mail and receiving personal mail at the office.

47.     Ms. Wiley responded to Plaintiff's e-mail with hostility and stated that no one had ever questioned her regarding UPS invoices prior to Plaintiff becoming supervisor.

48.     Consequently, Plaintiff reached out to the UPS Administrator and terminated Ms. Wiley's ability to ship over the internet because there were no controls for Plaintiff to monitor contemporaneously.

49.     On January 16, 2014, Plaintiff contacted Mary Rucke in Employee Relations to formally complain about Ms. Wiley's behavior and the lack of support she was receiving from management in dealing with Ms. Wiley.

50.     However, the Agency took no actions to stop Ms. Wiley's harassing and insubordinate behavior or intervene in the situation.

51.     On March 4, 2014, Ms. Wiley sent an e-mail falsely accusing Plaintiff of "jabbing, berating, and pushing [her] in a corner."

52.     In that e-mail, Ms. Wiley informed Plaintiff that she would be exercising the option for unscheduled telework.

53.     However, while teleworking, Ms. Wiley could not be reached via Blackberry telephone to complete her assignments.

54.     Plaintiff informed Ms. Wiley of the policy that she must be reachable by phone while teleworking to receive assignments.

55.     Ms. Wiley accused Plaintiff of denying Ms. Wiley the ability to telework in a very hostile manner.

56.     In a response e-mail, Plaintiff requested that Ms. Wiley refrain from sending hostile e-mails and contacted the Investigations Department regarding the incident.

57.     Majorie Bolden, Investigations Department, informed Plaintiff that she should contact Employee Relations and that there was nothing she could do to help Plaintiff.

58.     When Plaintiff again contacted Employee Relations, Ernie McFadden informed Plaintiff that insubordination was hard to prove and discouraged her from taking any action.

59.     On March 7, 2014, Plaintiff sent an e-mail to Mr. Rhoads inquiring as to whether Ms. Wiley had also e-mail him.

60.     Mr. Rhoads responded that he had not received an e-mail from Ms. Wiley, but then asked Plaintiff if she was expecting Ms. Wiley to do work while teleworking.  He told Plaintiff to go easy on Ms. Wiley.

61.     In April 2014, Plaintiff's first line supervisor became Ingrid Watson (Caucasian), Deputy Director PIM, GS-14 and her second line supervisor was Alan Dowdy (Caucasian), Assistant Deputy Administrator.

62.     Plaintiff's supervisor, Ms. Watson, is married to Michael Watson, Executive Director.

63.     Michael Watson was Mr. Rhoads' supervisor.

64.     On March 24, 2014, Plaintiff was placed on a secretarial detail assignment by Matthew Rhoads at USDA APHIS PPQ, Deputy Administrator's Office, in Downtown D.C.

65.     The detail was for approximately 30 days, from March 24, 2014 to April 20, 2014.

66.     During the detail, Plaintiff's supervisor was Deputy Director, Osama El-lissy (race unknown).

67.     While on detail in March 2014, Plaintiff saw Mr. Dowdy in the downtown office. Mr. Dowdy said to Plaintiff, "you must be down here on punishment."

68.     The punishment to which Mr. Dowdy was referring was being detailed to a secretarial position downtown for filing an EEO complaint.

69.     He then said, "Watch the ones with the pretty smiles," referring to Plaintiff and again, her filing an EEO complaint.

70.     These comments made Plaintiff feel embarrassed, intimidated, and stressed.

71.     In April 2014, Plaintiff requested to be placed on a list to be considered to attend the Blacks In Government (BIG) annual conference, which was to be held in Las Vegas, Nevada in August 2014.

72.     Plaintiff was initially put on the list to be considered to attend the conference.

73.     On April 20, 2014, Plaintiff was reassigned to a GS-301-09 Management Analyst position with no promotion potential.

74.     Plaintiff was never provided a reason for her reassignment.

75.     On or around April 20, 2014, Plaintiff was provided with a new position description for her reassignment.

76.     Plaintiff was also ordered to work in the office in downtown Washington, D.C., despite previously working in Riverdale, Maryland.

77.     Prior to Plaintiff's reassignment, Plaintiff was never informed that she did not meet the expectations required of a supervisory position.

78.     Plaintiff is not aware of any other employee who had been reassigned from one position to another in the last two years outside of her protected classes.

79.     Between her promotion and her demotion, Plaintiff did not have a performance review, nor was she counseled regarding her performance. Plaintiff reasonably believed she was adequately performing the duties of her position.

80.     On April 22, 2014, Mr. Rhoads told Plaintiff, "You know, you can use any remedy you like, it doesn't matter to me," referring to Plaintiff's EEO complaint.

81.     Plaintiff was intimidated by his comment and took it to understand that her situation would never improve or be resolved because she had filed an EEO complaint.

82.     On July 10, 2014, Ms. Watson verbally denied Plaintiff's request to attend the Blacks in Government (BIG) training conference, despite previously being on the list.

83.     On July 11, 2014, during a meeting, when the topic of the BIG conference came up, Ms. Watson said, "What did you not do that Matt asked you to do?" referring to not filing an EEO complaint.

84.     On July 22, 2014, Ms. Watson sent Plaintiff an e-mail in which she asked Plaintiff to give her information regarding local job fairs that Plaintiff wanted to attend.

85.     Plaintiff had never requested to attend any job fairs and told Ms. Watson such.  Rather, Plaintiff had requested to attend the BIG training conference where she could receive training to advance her career, which Ms. Watson had denied.

86.     Ms. Watson's e-mail implied that Plaintiff should start looking for another job.

## CAUSES OF ACTION

### COUNT ONE
**(Discrimination on the Basis of Race)**

87.     Ms. Kennedy incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

88.     As an African American, Plaintiff is a member of a protected class.

89.     Because of her race (African American), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including but not limited to, being assigned to supervise a known trouble employee without any guidance or support; the Agency failing to investigate or take any action after Plaintiff complained about Ms. Wiley's actions; Plaintiff's supervisors made harassing and demeaning comments to her to intimidate her against filing an EEO complaint; Plaintiff's supervisor inferred that Plaintiff should start looking for another job; the Agency denied Plaintiff's request to attend the Blacks in Government conference; Plaintiff was reassigned to a lower grade position with no promotion potential; management removed Plaintiff from her supervisory position prior to her one-year probationary period; and Plaintiff's supervisors failed to provide Plaintiff with the requested training and guidance in her supervisory position, in violation of Title VII.

90.     Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff s employment since she had a significant change in her duties and responsibilities.

91.     Defendant knew that Plaintiff is African American prior to subjecting Plaintiff to the aforementioned material adverse employment actions and was aware of the discrimination Plaintiff was subjected because of her race (African American).

92.     Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race (African American).

93.     Defendant has limited, segregated, and classified Plaintiff in a way that deprived her of employment opportunities and otherwise adversely affected her status as an employee because of her race (African American).

94.     As stated above, other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably then Plaintiff in the terms and conditions of employment.

95.     Plaintiff's race (African American) was a determining factor in Defendant's unlawful conduct toward Plaintiff.

96.     Plaintiff's race (African American) was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

97.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

98.     Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her race (African American).

99.     Defendant discriminated against Plaintiff because of his race (African American) by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

100.     As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages - including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

101.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

102.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.      Award compensatory damages;

b.      Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

c.      Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d.      Award reasonable attorneys fees, costs, and expenses incurred for this action;

e.      Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

f.      Supervisory training for the supervisors at issue herein;

g.      Award equitable, declaratory, and injunctive relief; and

h.      Award such other and further relief as this Honorable Court deems just and proper.

## COUNT TWO
### (Discrimination on the Basis of Reprisal)

103.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

104.    Plaintiff complained to her supervisors of the unlawful, hostile and discriminatory and retaliatory treatment which she was being subjected.

105.    Since on or around August 2013, and continuing through the present, Plaintiff regularly made several complaints of disparate treatment and discrimination to her supervisors, Matthew Rhoads and Ingrid Watson.

106.    On or around March 18, 2014, Plaintiff filed an informal EEO complaint of discrimination, which was investigated by the Agency.

107.    On or around May 29, 2014, Plaintiff filed a formal complaint of discrimination and reprisal, which was investigated by the Agency.

108.    Since Plaintiffs EEO complaints were not resolved and no action was taken to resolve them, Plaintiff sought relief from the United States Equal Employment Opportunity Commission ("EEOC") when she requested a hearing before an Administrative Judge.

109.    On July 5, 2016, the Administrative Judge remanded the case to the Agency for a Final Agency decision.

110.    On or around August 1, 2016, the Agency issued its Final Agency decision.

111.    Since engaging in protected EEO activity, Plaintiff has been subject to retaliatory adverse actions by Defendant, including but not limited to being assigned to supervise a known trouble employee without any guidance or support; the Agency failing to investigate or take any action after Plaintiff complained about Ms. Wiley's actions; Plaintiff's supervisors made harassing and demeaning comments to her to intimidate her against filing an EEO complaint; Plaintiff's supervisor inferred that Plaintiff should start looking for another job; the Agency denied Plaintiff's request to attend the Blacks in Government conference; Plaintiff was reassigned to a lower grade position with no promotion potential; management removed Plaintiff from her supervisory position prior to her one-year

14

probationary period; and Plaintiff's supervisors failed to provide Plaintiff with the requested training and guidance in her supervisory position.

112.   Similarly situated co-workers (no known prior EEO activity) were not subjected to the same adverse treatment or any adverse treatment.

113.   Defendant engaged in reprisal against Plaintiff because she opposed Defendant's discriminatory practices and participated in EEO activity.

114.   The adverse retaliatory actions to which Plaintiff has been subjected are directly a result of Plaintiff having previously engaged in protected EEO activity.

115.   Plaintiff complained to her supervisor and through her chain of command about the discrimination she was experiencing. As such, Defendant and Plaintiff's supervisors knew of Plaintiff's participation in protected EEO activity before subjecting her to the aforementioned adverse employment actions.

116.   As a result of Plaintiff's open opposition to Defendant's discriminatory treatment, Plaintiff was routinely retaliated against by her supervisors, who engaged in a persistent pattern of severe or pervasive harassment set forth herein, which created a hostile and offensive workplace.

117.   The adverse treatment that Plaintiff was being subjected to by Defendant was in front of and obvious to her co-workers.

118.       As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages - including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

119.    Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

120.    Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.      Award compensatory damages;

b.      Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

c.      Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d.      Award reasonable attorneys fees, costs, and expenses incurred for this action;

e.      Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

f.      Supervisory training for the supervisors at issue herein;

g.      Award equitable, declaratory, and injunctive relief; and

h.      Award such other and further relief as this Honorable Court deems just and proper.

## COUNT THREE
### (Hostile Work Environment)

121.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

122.     As a result of Plaintiffs protected class (race (African American) and/or engagement in protected EEO activity), Plaintiff's supervisors routinely humiliated Plaintiff and engaged in persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment in violation of Title VII.

123.     Plaintiff was regularly and continually subjected to harassing conduct that alleged throughout this Complaint, including but not limited to being assigned to supervise a known trouble employee without any guidance or support; the Agency failing to investigate or take any action after Plaintiff complained about Ms. Wiley's actions; Plaintiff's supervisors made harassing and demeaning comments to her to intimidate her against filing an EEO complaint; Plaintiff's supervisor inferred that Plaintiff should start looking for another job; the Agency denied Plaintiff's request to attend the Blacks in Government conference; Plaintiff was reassigned to a lower grade position with no promotion potential; management removed Plaintiff from her supervisory position prior to her one-year probationary period; and Plaintiff's supervisors failed to provide Plaintiff with the requested training and guidance in her supervisory position, which created a hostile and abusive work environment.

124.     Plaintiff believes that she was subjected to a hostile work environment based on her race (African American) and/or engagement in protected EEO activity.

125.     Defendant's unlawful conduct was unwelcome.

126.     Defendant's deliberate conduct of the adverse actions referred to throughout this Complaint created a hostile and abusive work environment.

127.     Plaintiff was subjected to harassment because race (African American) and/or engagement in protected EEO activity, and it unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

128.    Defendant knew or should have known of the harassment. Defendant failed to adequately investigate the harassment and took no effective, immediate or remedial action. Despite Plaintiff's complaints, the harassment continued unabated and increased over time.

129.    By failing to take appropriate and effective remedial action against Plaintiff's supervisors, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

130.    As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages - including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

131.    Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

132.    Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.    Award compensatory damages;

b.    Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

c.    Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d.      Award reasonable attorneys fees, costs, and expenses incurred for this action;

e.      Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

f.      Supervisory training for the supervisors at issue herein;

g.      Award equitable, declaratory, and injunctive relief; and

h.      Award such other and further relief as this Honorable Court deems just and proper.

## **EQUITABLE RELIEF**

133.    Plaintiff incorporates by reference to, all facts, law, and/or allegations contained in the preceding paragraphs, as if fully set forth herein.

134.    Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present clear and present dangers to the employees of Defendant and could result in further illegal actions on the party of Defendant, by and through its agents, servants and employees.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.      Order the Defendant to institute a policy and procedure to be implemented against discrimination;

b.       Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

c.      Supervisory training for the supervisors at issue herein; and

d.      Award such other and further relief as this Honorable Court deems just and proper.

## **JURY DEMAND**

1.      Plaintiff demands a trial by jury on all issues set forth herein.


Dated:
October 31, 2016                              Respectfully submitted,



By:       /s/ Donna Williams Rucker
          Donna Williams Rucker (D.C. Bar 446713)

          Tully Rinckey, PLLC
          815 Connecticut Ave., N.W.
          Suite 720
          Washington, DC 20006
          (202) 787-1900
          DRucker@fedattorney.com

          *Counsel for Plaintiff Juanita Kennedy*