|  |  |  |
|---|---|---|
| JUANITA KENNEDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:16-cv-02176-KBJ |
| | ) | |
| GEORGE ERVIN PERDUE III, Secretary | ) | |
| United States Department of Agriculture, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Juanita Kennedy, by and through her undersigned counsel, hereby respectfully submits this Opposition to Defendant's Motion for Summary Judgment. Based upon the information in the accompanying Memorandum of Points and Authorities, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment because Defendant violated Title VII of the Civil Rights Act of 1964 by: being assigned to supervise a known trouble employee without any guidance or support; the Agency failing to investigate or take any action after Plaintiff complained about Ms. Wiley's actions; Plaintiff's supervisors made harassing and demeaning comments to her to intimidate her against filing an EEO complaint; Plaintiff's supervisor inferred that Plaintiff should start looking for another job; the Agency denied Plaintiff's request to attend the Blacks in Government conference; Plaintiff was reassigned to a lower grade position with no promotion potential; management removed Plaintiff from her supervisory position prior to her one-year probationary period; and Plaintiff's supervisors failed to provide Plaintiff with the requested training and guidance in her supervisory position.  In

addition, there are material facts in dispute, which establish that Defendant is not entitled to Judgment as a matter of law. Moreover, any reasons offered by Defendant have been offered as pretext to mask the true actual discrimination. As such, Defendant's Motion for Summary Judgment must be denied.


November 20, 2018                         Respectfully submitted,


                                    By:   /s/ Donna Williams Rucker
                                          Donna Williams Rucker (D.C. Bar No. 446713)
                                          DEPUTY MANAGING PARTNER
                                          Tully Rinckey, PLLC
                                          815 Connecticut Ave., N.W.,
                                          Suite 720
                                          Washington, DC 20006
                                          (202) 787-1900
                                          drucker@fedattorney.com

                                          *Attorney for Plaintiff*

# TABLE OF AUTHORITIES

*St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993) ......................................................... 18

*Adickes v. Kress & Co.,* 398 U.S. 144, 157 (1970) ......................................................... 16, 17, 30

*Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284, 1291 (D.C.Cir.1998)) ........................................... 17

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ............................................ 16, 17, 30

*Baloch v. Kempthorne,* 550 F.3d 1191, 1201 (D.C.Cir.2008) ................................................. 28

*Bell v. Gonzales,* 398 F. Supp. 2d 78, 94 (D.D.C. 2005) ....................................................... 24

*Brady v. Office of Sergeant at Arms,* 520 F.3d 490, 493-94 (D.C. Cir. 2008) ........................ 22

*Broderick v. Donaldson,* 437 F.3d 1226, 1232 ....................................................................... 16

*Brooks v. Grundmann,* 748 F.3d 1273, 1276 (D.C.Cir.2014) ................................................. 28

*Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006) ..................................... 25

*Burke v. Gould,* 286 F.3d 513, 522 (D.C.Cir. 2002) ............................................................... 20

*\*Causey v. Balog,* 162 F.3d 795, 801 (4th Cir. 1998) ............................................................. 28

*\*Chappell-Johnson v. Powell,* 440 F.3d 484, 486-88 (D.C.Cir.2006) ..................................... 20

*Czekalski v. Peters,* 475 F.3d 360, 364, 374 U.S.App. D.C. 351 (D.C. Cir. 2007) ................. 20

*\*EEOC v. Sears Roebuck and Co.,* 243 F.3d 846, 854 (4th Cir., 2000) ................................... 15

*Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) .. 28

*Ginger v. District of Columbia,* 527 F.3d 1340, 1346 (D.C. Cir. 2008) .................................. 25

*Hamilton v. Geithner,* 666 F.3d 1344 ..................................................................................... 24

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, (1993) ........................................................ 27, 28

*Johnson v. Digital Equip. Corp.,* 836 F. Supp. 14, 18 (D.D.C.1993) ...................................... 17

*Jones,* 557 F.3d at 678 ....................................................................................................... 22, 25

*Lyles v. D.C.,* 65 F.Supp.3d 181, 192, 2014 U.S. Dist. LEXIS 119420, 24-26 .......................... 29

*Martin v. Locke,* 659 F. Supp. 2d 140, 145 (D. D.C. 2009) ..................................................... 17

*Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) ........................ 17

*\*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) ..................................... 18, 19, 20, 25

*McGrath v. Clinton,* 666 F.3d 1377, 1380 (D.C. Cir. 2012) .................................................... 24

*McKenna v. Weinberger,* 729 F.2d 783 (D.C. Cir. 1984) ......................................................... 24

*Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 66 (1986) .......................................... 27, 28

*Morgan v. Fed. Home Loan Mortg. Corp.,* 328 F.3d 647, 650-51 (D.C. Cir. 2003) ................... 24

*Mosby–Grant v. City of Hagerstown,* 630 F.3d 326, 334 (4th Cir.2010) ................................... 28

*Murrell v. Ocean Mecca Motel, Inc.,* 262 F.3d 253, 258-59 (4th Cir. 2001) ............................ 19

*Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116, (2002) ......................................... 28

*Price v. Thompson,* 380 F.3d 209, 212 (4th Cir. 2004) ........................................................... 18

*Proud v. Stone,* 945 F.2d 796, 798 (4th Cir. 1991 .................................................................. 19

*Rattigan v. Holder,* 982 F. Supp. 2d 69, 82 (D.D.C. 2013) ..................................................... 25

*Raytheon Co. v. Hernandez,* 540 U.S. 44 (2003) ..................................................................... 15

*Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 142 (2000) ................................. 19,22

*Richardson v. Gutierrez,* 477 F. Supp. 2d 22, 27 (D.D.C. 2007) ............................................ 24

*Singletary v. District of Columbia,* 351 F.3d 519, 524 (D.C. Cir. 2003) .................................. 24

*Singleton v. Potter,* 402 F.Supp.2d 12, 14 (D.D.C. 2005) ............................................................. 28

*Smith v. District of Columbia,* 430 F.3d 450, 455 (D.C. Cir. 2005) ....................................... 16, 24

*Snyder v. Louisiana,* 552 U.S. 472, 485 (2008) ............................................................................. 19

*Stella v. Mineta,* 284 F.3d 135, 145 (D.C. Cir. 2002) .................................................................... 20

*Stewart v. Ashcroft,* 352 F.3d 422, 426 (D.C. Cir. 2003) ............................................................... 20

*Texas Dep't of Cmty Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981) .................................. 18, 19

*Thomas v. WMATA,* 907 F. Supp. 2d 144, 149 (D.D.C. 2012) ...................................................... 23

*Townsend v. United States,* 236 F.Supp.3d 280, 301 (D.D.C. 2017) ............................................ 20

*United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 715 (1983) ................. 18

*Univ. of Texas Southwestern Med. Ctr. v. Nassar,* 133 S.Ct. 2517 (2013) .................................. 23

*Waterhouse v. District of Columbia,* 298 F.3d 989, 992–93 (D.C.Cir.2002) .................. 16, 17, 22

*Wiley v. Glassman,* 511 F.3d 151, 155 (D.C. Cir. 2007) ............................................................... 24

<u>S<small>TATUTES</small></u>

§ 2000e-2(a) (1) .............................................................................................................................. 20

*Title VII of the Civil Rights Act of 1964 ................................................................. 20, 24, 27

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 1

II. STATEMENT OF MATERIAL FACTS .............................................................. 2

III. LEGAL STANDARDS ..................................................................................... 16

    A. Summary Judgment Standard ............................................................... 16

    B. Title VII Standards ............................................................................... 18

IV. ARGUMENT ................................................................................................... 20

    A. PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE FOR RACE
       DISCRIMINATION. ............................................................................ 20

    B. PLAINTIFF HAS ESTABLISHED THAT THE AGENCY VIOLATED TITLE
       VII BY RETALIATING AGAINST PLAINTIFF BECAUSE OF
       DISCRIMINATION COMPLAINTS .................................................... 23

    C. PLAINTIFF HAS ESTABLISHED THAT THE AGENCY VIOLATED TITLE
       VII BY SUBJECTING HER TO A HOSTILE WORK ENVIRONMENT .......... 27

V. CONCLUSION ................................................................................................ 30

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**(Civil Division)**

| | |
|---|---|
| JUANITA KENNEDY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 1:16-cv-02176-KBJ |
| | ) |
| GEORGE ERVIN PERDUE III, Secretary | ) |
| United States Department of Agriculture, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S**
**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Juanita Kennedy (hereinafter "Ms. Kennedy" or "Plaintiff"), submits this

Memorandum of Points and Authorities in support of her opposition to the Motion for Summary

Judgment filed by the US Department of Agriculture (hereinafter "Defendant" or "Agency").

## I.  INTRODUCTION

Defendant is not entitled to summary judgment in this matter because there is substantial

evidence in the record when in viewed in a light most favorable to Plaintiff, shows that there are

genuine material facts in dispute and Defendant is not entitled to Judgment as a matter of law.  In

particular, the uncontroverted and controverted facts presented by Plaintiff prove that there is

sufficient evidence from which a reasonable jury could conclude that Plaintiff was assigned to

supervise a known trouble employee without any guidance or support; the Agency failed to

investigate or take any action after Plaintiff complained about Ms. Wiley's actions; Plaintiff's

supervisors made harassing and demeaning comments to her to intimidate her and keep her from

filing an EEO complaint; Plaintiff's supervisor inferred that Plaintiff should start looking for

another job; the Agency unreasonably denied Plaintiff's request to attend the Blacks in Government conference; Plaintiff was reassigned to a lower grade position with no promotion potential; management unfairly removed Plaintiff from her supervisory position prior to her one-year probationary period, despite the fact that she was performing satisfactorily and she had received a cash award based on her performance; and Plaintiff's supervisors failed to provide Plaintiff with the requested training and guidance in her supervisory position, which were acts of discrimination and retaliation, and created a hostile and abusive work environment.

As such, when as is the case here, the employer cannot support the reasons for its adverse actions with credible evidence, fails to remedy the supervisor's harassment towards his subordinate, gives preferences to employees who do not complain of discrimination, it is appropriate for the case to go to a jury. Thus, for these and other reasons set forth herein, Plaintiff respectfully requests that this Court deny Defendant's motion for summary judgment and set this matter for trial on the merits.

## II.    STATEMENT OF MATERIAL FACTS IN DISPUTE[1]

1.    Plaintiff was an employee of the Department of Agriculture, in Plant Protection and Quarantine, Plant Health Programs, in the Phystosanitary Issues Management (PIM) unit.

2.    From 2012 to April 2014, Plaintiff's first line supervisor was Matthew Rhoads (Caucasian), Associate Executive Director, GS-15. *See* ROI at 207, 210.

3.    Mr. Rhoads was aware of Plaintiff's race (African American) since he met her, which was around 2008 or 2009. *See* ROI at 210.

---

[1] Plaintiff responded to Defendant's Statement of Undisputed Material Facts, attached to this pleading.

4.     On June 16, 2013, Plaintiff was competitively selected for the position of Supervisory Resource Management Specialist, GS-0301-09/11, with promotion potential to a GS-11 position. *See* Ex. 58, Rhoads Deposition ("Depo") at 49; Exs. 3 and 4.

5.     Prior to her application, Mr. Rhoads encouraged Ms. Kennedy to apply.

6.     This position advertisement did not include reference to a one-year probationary period. *See* Ex. 2.

7.     However, after Ms. Kennedy was selected, the selection SF-50 included probationary language. *See* Ex. 3.

8.     Mr. Rhoads was the selecting official for this position.  *See* Ex. 58, Rhoads Depo at 48.

9.     Mr. Rhoads understood that Ms. Kennedy had no supervisory experience prior to this position. *See* Ex. 58, Rhoads Depo at pg. 52-53.

10.     Nonetheless, Mr. Rhoads, along with the selection panel, felt that Ms. Kennedy was qualified for the position. *See* Ex. 58, Rhoads Depo at pg. 74-75.

11.     Additionally, in a note from Mr. Rhoads to the selection panel, he said that the selectee "has to be comfortable working with challenging people." *See* Ex. 53.

12.     Prior to starting in the position, Plaintiff was not provided with training as a new supervisor. *See* Ex. 58, Rhoads Depo at pg. 108-111.  In fact, she was only allowed to attend the APHIS Fundamentals – the Fundamentals of APHIS Human Resource Management course. *See id.* at 111.

13.     In this position, Plaintiff supervised five employees.  *See* Ex. 58, Rhoads Depo at 56; Ex. 63, Plaintiff's Depo at 22.

14. One of the five employees was an employee named Lynekia ("Lynn") Wiley, Administrative Support Assistant, GS-07. *Id.*

15. Ms. Wiley had previously been supervised by Stacie Cain (Caucasian, female) against whom Ms. Wiley filed an EEO complaint. *See* Ex. 63, Plaintiff's Depo at 36.

16. Plaintiff was informed by Terry Morris when she accepted the position that, in all likelihood, she was being set up to fail. *See* Ex. 63, Plaintiff's Depo at 47.

17. Ms. Morris actually advised Plaintiff not to accept the position. *See* id.

18. Specifically, management was putting Ms. Wiley (African-American) under Plaintiff's supervision so that if Ms. Wiley filed another complaint and now named Plaintiff (another African-American), it would not carry as much weight as the complaint against Ms. Cain (Caucasian) carried. *See* Ex. 72, Plaintiff's Affidavit, at 1.

19. In fact, only African-Americans were interviewed for the position. *See* Ex. 63, Plaintiff's Depo at 21.

20. Nonetheless, Plaintiff accepted the position. *See* Ex. 63, Plaintiff's Depo at 48.

21. Defendant was aware that the subordinate Plaintiff was assigned to supervise was a "problem" employee. *See* Exh. 1.

22. On June 25, 2013, Mr. Rhoads sent Plaintiff a list of assignments for Plaintiff to complete. *See* Ex. 5.

23. That same day, Plaintiff responded with progress and anticipated completion dates for those assignments. *See* Ex. 6.

24. On July 2, 2013, Plaintiff asked to meet with Mr. Rhoads to discuss the issues with Ms. Wiley. *See* Ex. 10.

25.     The issues regarding Ms. Wiley's time and attendance were so serious that Mr. Rhoads requested the turnstile records to compare with Ms. Wiley's entries into WebTA. *See* Ex. 49.

26.     Plaintiff was proactive in organizing training for her staff while in the position.  *See* Ex. 11.

27.     On August 14, 2013, after noticing numerous inconsistencies with Ms. Wiley's timesheet, Plaintiff asked Ms. Wiley to correct her timesheet and to submit leave requests to cover the absences.  *See* Ex. 50.

28.     On August 7, 2013, Ms. Wiley's previous management sent Plaintiff e-mail correspondence of Ms. Wiley's previous antics to help her understand the employee Plaintiff was dealing with.  *See* Ex. 9.

29.     Ms. Wiley had numerous days where she had taken an extended lunch break and did not properly account for the time on her timesheet.

30.     In response, Ms. Wiley sent Plaintiff an e-mail requesting Plaintiff "model" for her in real time, step-by-step how she wanted the timesheet to appear in the timesheet software, WebTa.

31.     Plaintiff agreed and schedule a meeting to train Ms. Wiley. *See* Ex. 72, Plaintiff's Affidavit, at 2.

32.     However, on August 27, 2013, Ms. Wiley sent Plaintiff's supervisor, Mr. Rhoads, an e-mail stating that she was unable to attend Plaintiff's meeting and that she was "overwhelmed by the concept of being forced to be in the same space as [Plaintiff]."  Ms. Wiley continued that she was scared to eat or drink anything because of a "choking" feeling, that she was "ill" over attending the meeting, and would much rather go home. *See* Ex. 12.

33.    Mr. Rhoads responded to Ms. Wiley that the assignment was within the scope of her duties and that he would set up a conflict resolutions meeting so that Ms. Wiley and Plaintiff could resolve their issues. *See* Ex. 13.

34.    However, Plaintiff, until this point, had been unaware of any issues other than informing Ms. Wiley of the inconsistencies with her timesheet.

35.    Mr. Rhoads did not provide Plaintiff with any guidance or support to assist Plaintiff in dealing with the situation. *See* Exs. 47, 48.

36.    On September 3, 3013, Plaintiff and Mr. Rhoads received notification that Ms. Wiley had filed an informal EEO complaint against Plaintiff and Mr. Rhoads.  *See* Ex. 52.

37.    However, Mr. Rhoads denied knowing that Ms. Wiley ever filed an EEO complaint. *See* Ex. 58, Rhoads Depo at 45.

38.    On September 4, 2013, Mr. McFadden sent an e-mail to Mr. Rhoads confirming the issues Ms. Kennedy had identified regarding discrepancies in Ms. Wiley's time. *See* Ex. 14.

39.    On September 10, 2013, Ms. Wiley sent another e-mail to Mr. Rhoads falsely accusing Plaintiff of sending Ms. Wiley threatening notes.  *See* Ex. 15.

40.    Ms. Wiley specifically stated that Plaintiff "made her sick." *Id*.

41.    On September 24, 2013, Ms. Kennedy followed up with Mr. McFadden about a disciplinary action against Ms. Wiley. *See* Ex. 17.

42.    Mr. McFadden responded that instead of a suspension, a letter of caution would be better.  *See* id.

43.    On October 3, 2013, Plaintiff issued Ms. Wiley a Letter of Caution for eight (8) instances of inconsistencies on her timesheet.  *See* Ex. 19.

44. Plaintiff had drafted the letter months' prior for entries that had occurred in June and July 2013; however, Employee Relations took several months to create the final letter. *See* Ex. 72, Plaintiff's Affidavit.

45. Additionally, originally, Plaintiff had recommended that Ms. Wiley be suspended for one day. However, Mr. Rhoads did not want to suspend Ms. Wiley. *See* Ex. 16.

46. Mr. Rhoads had initially supported the suspension, but after the EEO complaint, suddenly changed his mind. *See* Ex. 51.

47. Plaintiff presented the letter to Ms. Wiley, explained the reasons for the Letter of Caution, and encouraged Ms. Wiley that there would be team building events coming up soon for the staff. *See* Ex. 18.

48. In the presence of Mr. Rhoads, Ms. Wiley stated, "being in your presence makes me physically ill." Mr. Rhoads did nothing in response to the comment. *See* Ex. 72, Plaintiff's Affidavit.

49. Plaintiff sent Mr. Rhoads an e-mail requesting that Ms. Wiley be informed that her comments were inappropriate and that Ms. Wiley be removed from Plaintiff's supervision. Mr. Rhoads only replied, "No."

50. Throughout the Fall of 2013, Plaintiff routinely communicated to Mr. Rhoads her progress on specific tasks. *See* Ex. 20.

51. However, one of her major tasks was handling Ms. Wiley. Mr. Rhoads testified that "[Ms. Kennedy] was having problems dealing with some personnel issues. A specific employee was taking up a great deal of her time and still also was not progressing towards any – what appeared to me to be any kind of serious resolution." *See* Ex. 58, Rhoads Depo at 35. *Also*

*see* Ex. 47, (additional examples of Ms. Kennedy attempting to manage Ms. Wiley, including correspondence with Employee Relations and Mr. Rhoads).

52.     An additional hurdle that Ms. Kennedy faced was frequently when she scheduled work meetings, her meetings would either be postponed or cancelled.  *See* Ex. 48, (Examples of Ms. Kennedy's meetings being cancelled or postponed).

53.     On October 3, 2013, Plaintiff scheduled a meeting with Ms. Wiley to "discuss time and attendance issues." *See* Ex. 18.

54.     On December 2, 2013, Plaintiff sent Ms. Wiley an e-mail regarding an Internet Shipping Charge for $466.40. *See* Ex. 72, Plaintiff's Affidavit.

55.     Plaintiff had been made aware by Keith Miller that Ms. Wiley had been allegedly using the UPS account for personal mail and receiving personal mail at the office.  *See* Ex. 7.

56.     Ms. Wiley responded to Plaintiff's e-mail with hostility and stated that no one had ever questioned her regarding UPS invoices prior to Plaintiff becoming supervisor. *See* Ex. 72, Plaintiff's Affidavit.

57.     Consequently, Plaintiff reached out to the UPS Administrator and terminated Ms. Wiley's ability to ship over the internet because there were no controls for Plaintiff to monitor contemporaneously. *See* Ex. 47.

58.     The Agency produced a document dated December 12, 2013, that appears to be a performance review of Plaintiff.  However, Plaintiff's name is written incorrectly and Plaintiff never signed this document. *See* Ex. 21.

59.     It appears that this document was faxed from APHIS PPQ. *See* id.

60.     Furthermore, there appear to be multiple versions of this document where the handwriting changes.  Compare Ex. 21 to Ex. 22.

61. On January 13, 2014, Plaintiff scheduled a meeting with Marjorie Bolden, Investigations Department, to discuss Ms. Wiley's conduct. *See* Ex. 23.

62. On January 16, 2014, Plaintiff contacted Mary Rucke in Employee Relations to formally complain about Ms. Wiley's behavior and the lack of support she was receiving from management in dealing with Ms. Wiley. *See* Ex. 25.

63. However, the Agency took no actions to stop Ms. Wiley's harassing and insubordinate behavior or intervene in the situation. *See* Ex. 48.

64. Additionally, on January 16, 2014, Plaintiff informed Mr. Rhoads of more issues with Ms. Wiley's time entries. *See* Ex. 24.

65. On January 28, 2014, Plaintiff alerted Ernie McFadden, again, of the discrepancies with Ms. Wiley's time entries. *See* Ex. 26.

66. On March 4, 2014, Ms. Wiley sent an e-mail falsely accusing Plaintiff of "jabbing, berating, and pushing [her] in a corner." *See* Ex. 27.

67. In that e-mail, Ms. Wiley informed Plaintiff that she would be exercising the option for unscheduled telework. *Id*.

68. However, while teleworking, Ms. Wiley could not be reached via Blackberry telephone to complete her assignments. Plaintiff informed Ms. Wiley of the policy that she must be reachable by phone while teleworking to receive assignments. Ms. Wiley accused Plaintiff of denying Ms. Wiley the ability to telework in a very hostile manner. *Id*.

69. In a response e-mail, Plaintiff requested that Ms. Wiley refrain from sending hostile e-mails and contacted the Investigations Department, Marjorie Bolden, again regarding the incident. *See* id.

70.     Ms. Bolden verbally informed Plaintiff that she should contact Employee Relations and that there was nothing she could do to help Plaintiff. *See* id.

71.     When Plaintiff again contacted Employee Relations, Ernie McFadden informed Plaintiff that insubordination was hard to prove and discouraged her from taking any action. *See* Ex. 72, Plaintiff's Affidavit.

72.     On March 7, 2014, Plaintiff sent an e-mail to Mr. Rhoads inquiring as to whether Ms. Wiley had also e-mailed him. *See* Ex. 29.

73.     Mr. Rhoads responded that he had not received an e-mail from Ms. Wiley, but then asked Plaintiff if she was expecting Ms. Wiley to do work while teleworking. He told Plaintiff to go easy on Ms. Wiley. *See* id.

74.     On March 10, 2014, Plaintiff reached out for assistance with the "performance challenges" she was experiencing with the subordinate, Ms. White, but did not receive assistance or guidance. *See* Ex. 28.

75.     On March 11, 2014, Plaintiff met with Mr. Rhoads to discuss the issues she was facing with Ms. Wiley. Instead, the meeting was focused, inappropriately, on Plaintiff. *See* Ex. 31.

76.     Plaintiff emailed Mr. Rhoads recapping that meeting and requested that Ms. Wiley be reassigned elsewhere "to reduce the constant tension and hostile work environment she creates on my staff." *See* id.

77.     On March 11, 2014, Plaintiff sent Mr. Rhoads a request to attend EEO training, noting that no travel was required for the training. *See* Ex. 30. Still, Mr. Rhoads denied this request.

78. Instead, on March 24, 2014, Plaintiff was placed on a secretarial detail assignment by Matthew Rhoads at USDA APHIS PPQ, Deputy Administrator's Office, in Downtown D.C. *See* Ex. 72, Plaintiff's Affidavit.

79. The detail was for approximately 30 days, from March 24, 2014 to April 20, 2014. *See* Ex. 72, Plaintiff's Affidavit.

80. On March 28, 2014, Plaintiff was scheduled to have a mid-year review, but it never occurred. *See* Ex. 31.

81. In fact, Plaintiff never had a mid-year review by Mr. Rhoads. *See* Ex. 72, Plaintiff's Affidavit. Plaintiff did receive a mid-year review from Emily Pullins for the rating period 10/1/2012 – 6/15/2013, who was her supervisor during this period. *See* Ex. 66.

82. Mr. Rhoads prevaricated during his deposition when he recounted a mid-year review that never occurred. He said, "I don't recall the substance of our midyear discussion. I recall that we had a conversation before midyear." *See* Ex. 58, Rhoads Depo at 97.

83. During the detail, Plaintiff's supervisor was Deputy Director, Osama El-lissy (race unknown). *See* Ex. 72, Plaintiff's Affidavit.

84. While on detail in March 2014, Plaintiff saw Mr. Dowdy in the downtown office. Mr. Dowdy said to Plaintiff, "you must be down here on punishment." *See* Ex. 72, Plaintiff's Affidavit. Mr. Dowdy denied making this statement. *See* Ex. 61, Dowdy Depo at 194.

85. The punishment to which Mr. Dowdy was referring was being detailed to a secretarial position downtown for filing an EEO complaint. *See* Ex. 72, Plaintiff's Affidavit.

86. He then said, "Watch the ones with the pretty smiles," referring to Plaintiff and again, her filing an EEO complaint. *See* Ex. 72, Plaintiff's Affidavit. Mr. Dowdy did not deny

making this statement, but rather stated that he believed the statement was a compliment. *See* Ex. 61, Dowdy Depo at 198.

87.     These comments made Plaintiff feel embarrassed, intimidated, and stressed. *See* Ex. 65.

88.     In April 2014, Plaintiff's first line supervisor became Ingrid Watson (Caucasian), Deputy Director PIM, GS-14 and her second line supervisor was Alan Dowdy (Caucasian), Assistant Deputy Administrator. *See* Ex. 64.

89.     Plaintiff's supervisor, Ms. Watson, is married to Michael Watson, Executive Director. *See* Ex. 62, Watson Depo at 221.

90.     Michael Watson was Mr. Rhoads' supervisor. *See* Ex. 58, Rhoads Depo at 18.

91.     In April 2014, Plaintiff requested to be placed on a list to be considered to attend the Blacks In Government (BIG) annual conference, which was to be held in Las Vegas, Nevada in August 2014. *See* Ex. 43.

92.     Plaintiff was initially put on the list to be considered to attend the conference. *See* Ex. 43.

93.     On April 10, 2013, Ms. Kennedy attended the PHP All Hands Meeting and took notes on the meeting agenda regarding what was discussed. *See* Ex. 33. Ms. Kennedy noted that some of the items that Mr. Rhoads stated needed to be done had already been done.

94.     On April 20, 2014, Plaintiff was reassigned to a GS-301-09 Management Analyst position with no promotion potential. *See* Exs. 34, 37.

95.     Apparently, "a probationary supervisor not making it through their probationary period is not common." *See* Ex. 55.

96.     On or around April 20, 2014, Plaintiff was provided with a new position description for her reassignment.  *See* Ex. 42.

97.     Yet, on April 21, 2014, Mr. Rhoads signed a Within-Grade Increase for Plaintiff in the Supervisory Resource Management Specialist position for "An Acceptable Level of Competence." *See* Ex. 36.

98.     Plaintiff was also ordered to work in the office in downtown Washington, D.C., despite previously working in Riverdale, Maryland. *See* Ex. 72, Plaintiff's Affidavit.

99.     Prior to Plaintiff's reassignment, Plaintiff was never informed that she did not meet the expectations required of a supervisory position.  *See* Ex. 72, Plaintiff's Affidavit.

100.    Between her promotion and her demotion, Plaintiff did not have a performance review, nor was she counseled regarding her performance.  Plaintiff reasonably believed she was adequately performing the duties of her position. *See* Ex. 72, Plaintiff's Affidavit.

101.    In fact, the work referenced as not handled (the TDY) was actually completed by another employee, Mary Beverly, and should not have been counted against Plaintiff. *See* Exh. 35.

102.    On April 21, 2014, Mr. Rhoads requested that Ms. Kennedy meet with him to discuss the reassignment. *See* Ex. 38.

103.    When Plaintiff went to meet with Mr. Rhoads, he was upset that she had filed her EEO complaint. *See* Ex. 39.

104.    During that meeting, Mr. Rhoads told Plaintiff in a loud tone, "You know, you can use any remedy you like, it doesn't matter to me." *See* Ex. 58, Rhoads Depo at 143.  Plaintiff interpreted his comment to refer to her EEO complaint.  *See* Ex. 72, Plaintiff's Affidavit.

105.    Plaintiff was intimidated by his comment and took it to understand that her situation would never improve or be resolved because she had filed an EEO complaint. *See* Ex. 72, Plaintiff's Affidavit.

106.    On April 28, 2014, Plaintiff submitted her requested justification to attend the Blacks in Government conference to Ms. Watson. *See* Ex. 40.

107.    In June 2014, Plaintiff received a cash award of $500 that was "performance based." *See* Ex. 41.

108.    On July 10, 2014, Ms. Watson verbally denied Plaintiff's request to attend the Blacks in Government (BIG) training conference, despite previously being on the list. *See* Ex. 72, Plaintiff's Affidavit.

109.    On July 10, 2014, Plaintiff followed up with an e-mail to Ms. Watson that said, "however I did not appreciate you bringing up my prior work ethic under Mr. Matthew Rhoads. Just so you know, my prior work ethics with Mr. Rhoads were excellent." *See* Ex. 44.

110.    On July 11, 2014, during a meeting, when the topic of the BIG conference came up, Ms. Watson said, "What did you not do that Matt asked you to do?" referring to not filing an EEO complaint. *See* Ex. 72, Plaintiff's Affidavit.

111.    On July 14, 2014, the Agency issued the list of employees approved to attend the Blacks in Government conference.  Ms. Kennedy was not included on that list. *See* Ex. 45.

112.    On July 22, 2014, Ms. Watson sent Plaintiff an e-mail in which she asked Plaintiff to give her information regarding local job fairs that Plaintiff wanted to attend.  *See* Ex. 8.

113.    Plaintiff had never requested to attend any job fairs and told Ms. Watson such. Rather, Plaintiff had requested to attend the BIG training conference where she could receive training to advance her career, which Ms. Watson had denied. *Id.*

114. Plaintiff believed that Ms. Watson's e-mail implied that Plaintiff should start looking for another job. *See* Ex. 72, Plaintiff's Affidavit.

115. On November 4, 2014, Ms. Kennedy followed up regarding the 2014 Federal Interagency Diversity Partnership Training Day she had requested to attend, which was scheduled for November 12, 2014. *See* Ex. 46.

116. Ms. Watson responded that she would prefer Ms. Kennedy attend an internal PIM meeting because "it will be Alan [Dowdy]'s first one in a while, and I want maximum participation that day." *See id.*

117. Ms. Watson also asked Ms. Kennedy to what her meeting on November 6, 2014 was pertaining. Ms. Kennedy responded that it was regarding her EEO complaint. *See* id. at 148-149.

118. On November 12, 2014, the same day on which Plaintiff had requested training, Mr. Dowdy sent an e-mail stating that he would not be able to attend the meeting. *See* id. at 151.

119. In 2016, it was known that the USDA was not acting in a timely fashion regarding complaints against high level officials. *See* Exh. 57.

120. Plaintiff received accolades for her work and "professionalism" from the Special Assistant to the Deputy Administrator. *See* Exh. 56.

121. A reasonable juror could conclude that Ms. Kennedy was the victim of discrimination and hostile work environment.

122. Defendant's proffered justifications for its conduct fails because it is contrary to the evidence. *EEOC v. Sears Roebuck and Co*., 243 F.3d 846, 854 (4th Cir., 2000) (discussing the requirement that the employer make its showing "conclusively" with "abundant and uncontroverted independent evidence").

123. A reasonable jury could infer that the Defendant's explanation for the treatment Ms. Kennedy received was pre-textual and that this pretext shielded its discriminatory and retaliatory motives. *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003); *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C.Cir.2006) (*quoting Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C.Cir.2005)).

124. Accordingly, the Defendant's Motion for Summary Judgment should be denied under *Adickes, Anderson and Waterhouse infra*, as well as other pertinent federal and state law, since there are material facts in dispute and a reasonable fact finder could determine that Defendant was liable for its unlawful conduct in violation of Title VII.

125. Plaintiff was set up to fail from the outset and she was not taken seriously as an on-boarding supervisor. *See* Ex. 67.

126. Just as Plaintiff started as a new supervisor, her supervisor, Mr. Rhoades left for a two-week vacation and referred Plaintiff to Jennifer Lemly, in his absence. *See* Ex. 68.

127. Mr. Rhoades was in fact aware of the bank car cancellations because he was copied on the emails Plaintiff sent around regarding the same. *See* Ex. 72, Plaintiff's Affidavit; Ex. 69.

128. Mr. Rhoades also was aware that Plaintiff was not required to the the performance evaluations for her new subordinates because she had not supervised then long enough. *See* Ex. 72, Plaintiff's Affidavit; Ex. 70

129. The work environment remains hostile and Plaintiff has had to continue to complain about retaliation and unfair treatment. *See* Ex. 71.

## III. LEGAL STANDARDS

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the

moving party has proven its burden of demonstrating the absence of any genuine issue of material facts. *Adickes v. Kress & Co*., 398 U.S. 144, 157 (1970). As the Supreme Court has explained, summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In ruling on a motion for summary judgment, the Court must view the facts, and the inferences to be drawn therefrom, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party is entitled to a grant of summary judgment only if no issues of material fact remain for the trier of fact to determine at trial. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Martin v. Locke, 659 F. Supp. 2d 140, 145 (D. D.C. 2009). Thus, "[s]ummary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party. *Anderson*, 477 U.S. 242, 248 (1986).

The D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary judgment motions in such cases with special caution. *Johnson v. Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C.1993). Specifically, in considering on a motion for summary judgment in a discrimination case, the court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia*, 298 F.3d 989, 992–93 (D.C.Cir.2002) (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C.Cir.1998)). The plaintiff need not present evidence in each of these categories to avoid summary judgment. *Aka*, 156 F.3d at 1289.  Rather, the court should assess the Plaintiff's challenge

to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291. Here, as demonstrated throughout, Ms. Kennedy has presented evidence in each of these categories.

## B. <u>TITLE VII STANDARDS</u>

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established a three-step burden shifting framework for discrimination cases where there is no direct evidence of such. *Id.*; *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Under *McDonnell Douglas*, an employee must generally make out a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 792-93. The Supreme Court has held "[t]he *prima facie* case method established in *McDonnell Douglas* was never intended to be rigid, mechanized, or ritualistic . . . ." *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (internal citation and quotations omitted). Indeed, "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine,* 450 U.S. at 253. Only after the employee puts forth her *prima facie* case, the burden of production then shifts to the employer to articulate a legitimate, non-retaliatory justification for its action. *Id.* "If the employer sets forth a legitimate, non-retaliatory explanation for the action, the plaintiff then must show that the employer's proffered reasons are pretextual or [her] claim will fail." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). If the employer does not establish a legitimate nondiscriminatory reason for its conduct, then the employee's prima facie case is sufficient to go before a jury. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993) ("The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action."); *Hicks*, 509 U.S. at 528 (once a plaintiff has established a *prima facie* case of discrimination, "the employer must respond or lose"); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981)

("To rebut the presumption, the employer must articulate a legitimate, non-discriminatory reason for its action."); *Burdine,* 450 U.S. at 255-56 (finding that an employer's offered reason must "frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.").

In this case, Defendant appears to proffer what it believes to be a legitimate, nondiscriminatory to explain the harassment, disparate treatment, and retaliation. As such, this Court must determine, without addressing whether a *prima facie* case was met, the ultimate question, *to wit*, whether a reasonable juror could find that Ms. Kennedy has proven harassment and/or discrimination. *Hicks*, 509 U.S. at 502; *Reeves* v. *Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000) (when the employer makes a legitimate reason for the adverse actions taken, the presumption of discrimination drops out); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981) (when the employer makes a legitimate reason for the disparate treatment the "sole remaining issue [is] discrimination *vel non*."). Similarly, in the context of discriminatory jury selections, the Supreme Court has held that pretext evidence alone allows an inference of discrimination. *Snyder v. Louisiana*, 552 U.S. 472, 485 (2008) ("The prosecution's proffer of [a] pretextual explanation naturally gives rise to an inference of discriminatory intent."); *see also Murrell v. Ocean Mecca Motel, Inc.,* 262 F.3d 253, 258-59 (4th Cir. 2001) ("once a plaintiff has established a prima facie case and shown the defendant's explanation to be false, the plaintiff need not submit additional evidence of discrimination unless no rational factfinder could conclude that the action was discriminatory"). Thus, "[c]ourts must . . . resist the temptation to become so entwined in the intricacies of the [*McDonnell Douglas*] proof scheme that they forget that the scheme exists solely to facilitate determination of 'the ultimate question of discrimination *vel non*.'" *Proud v. Stone,* 945 F.2d 796, 798 (4th Cir. 1991) (citation omitted).

# IV.    ARGUMENT

A. **PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE FOR RACE DISCRIMINATION**

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment" because of such individual's race, color, religion, sex, or national origin. § 2000e-2(a) (1).  To establish a prima facie case of discrimination under Title VII, a plaintiff must show that: 1) she is a member of a protected class; 2) she suffered an adverse employment action; and 3) the unfavorable action gives rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002).

Here, Ms. Kennedy is a member of a protected class because her race is African American. Ms. Kennedy was subject to adverse employment actions when she was not provided support and/or training in her new role as a supervisor, was detailed away from her position without reason, and ultimately demoted, being placed into a position with no upward mobility.  Specifically, interfering with the upward classification of a position is an adverse employment actions. *See Chappell-Johnson v. Powell*, 440 F.3d 484, 486-88 (D.C.Cir.2006).  The plaintiff's demotion qualifies as an adverse employment action. *Townsend v. United States*, 236 F. Supp. 3d 280, 301, n.10 (D.D.C. 2017), citing *Czekalski v. Peters*, 475 F.3d 360, 364, 374 U.S. App. D.C. 351 (D.C. Cir. 2007) (noting that "withdrawing an employee's supervisory duties . . . constitutes an adverse employment action." (quoting *Stewart v. Ashcroft*, 352 F.3d 422, 426, 359 U.S. App. D.C. 139 (D.C. Cir. 2003)); *see also Burke v. Gould*, 286 F.3d 513, 522, 351 U.S. App. D.C. 1 (D.C. Cir. 2002) ("[W]e have no doubt that the removal of [plaintiff's] supervisory responsibilities constituted an adverse employment action.").

These adverse employment actions give rise to an inference of discrimination because similarly situated co-workers were either promoted, given no guidance or training, and then demoted within months of being selected. Mr. Rhoads testified that he "had never been in a scenario where I had looked at reassigning an – a probationary employee before." Ex. 58, Rhoads Depo at 23. There are no records that the Agency has produced that what happened to Ms. Kennedy has ever happened to another employee.

Additionally, the Agency, by its witnesses, have lied repeatedly regarding Ms. Wiley's EEO activities. Ms. Lashon Cole, a Rule 30(b)(6) witness for the Agency, said, "I know of no EEO complaint filed by Ms. Wiley." *See* Ex. 60, Cole Depo at 153. Mr. Rhoads claimed that he was unsure if Ms. Wiley ever filed any EEO complaints. Ex. 58, Rhoads Depo at 39. However, it was well known at the time that months into Ms. Kennedy's supervision of Ms. Wiley, she filed another EEO complaint against Ms. Kennedy. *See* Ex. 52. Furthermore, Ms. Kennedy was actually warned by an HR employee not to take the supervisor position because she was "being set up to fail." *See* Statement of Facts ("SOF"), ¶ 16-17.

In its motion, the Agency claims that Plaintiff "failed to allege several materially adverse employment actions negating a *prima facie* case of discrimination and retaliation; and . . . the Agency had legitimate, non-discriminator reasons for the employment actions at issue, include the decision to remove Plaintiff from her supervisory position." *See* Deft. Mot. At 2. The Agency then claimed that Plaintiff cannot show that those offered reasons were pretext for unlawful discrimination or retaliation, and failed to establish a hostile work environment. *Id.* Here, as discussed in further detail below, the Agency's reasons for demoting Ms. Kennedy are unworthy of credence, Plaintiff has established a *prima facie* case of discrimination and retaliation, can establish pretext, and has demonstrated that she was subjected to a hostile work environment.

In particular, if the employer sets forth a legitimate, non-discriminatory reason for the employment action, the plaintiff must then be afforded an "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097. In the DC Circuit, "the question whether the employee actually made out a *prima facie* case is no longer relevant, and thus disappears and drops out of the picture." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008). "[T]he court reviews each of the three relevant categories of evidence—prima facie, pretext, and any other evidence to determine whether they 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer retaliation." *Jones*, 557 F.3d at 678 (*citing Waterhouse v. District of Columbia*, 298 F.3d 989, 996 (D.C. Cir. 2002)). In other words, plaintiff must show either that 1) a discriminatory reason more likely motivated defendant or that 2) the defendant's proffered explanation is unworthy of credence and more than likely not the real reasons for the decision(s) at issue. *McDonnell-Douglas Co.*, 411 U.S. at 805; *Reeves v. Sanderson Plumbing Corp.*, 530 U.S. 133 (2000)(plaintiff need not prove that discrimination motivated the employer, but merely that the reason offered by the defendant is not worthy of credence).

On top of the reasons for the demotion, pretext and other evidence proves that race discrimination more likely motivated the Agency to take action against Ms. Kennedy. The Agency had to deal with a problematic employee (Ms. Wiley) who was filing race discrimination claims against it. Mr. Rhoads selected Ms. Kennedy, knowing she had no supervisory experience, provided her with no training or assistance, allowed Ms. Kennedy to interact with the problem employee, and ultimately that problem employee filed against Ms. Kennedy. *See* pg. 3 above. By doing so, Ms. Wiley's complaints lost credibility because now her supervisor was of her same

race.  Once Ms. Wiley's EEO issues were addressed, Mr. Rhoads quietly detailed Ms. Kennedy downtown until he was able to fully demote her.  Ms. Kennedy was put into that position solely because of her race and thus, demoted from the position because of her race.

In light of the evidence, it is clear that the Agency would never have promoted Ms. Kennedy if she were of a different race. *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517 (2013). The Agency has failed to establish that it would have promoted and then unceremoniously demoted Ms. Kennedy notwithstanding Ms. Kennedy's race. *Sears Roebuck & Co.*, 243 F.3d at 854 (discussing the requirement that the employer make its showing "conclusively" with "abundant and uncontroverted independent evidence"). Additionally, given the above evidence and Ms. Kennedy's *prima facie* evidence, a jury could plausibly conclude that the Agency discriminated against her in violation of Title VII.

Moreover, there is a genuine dispute of material facts as to whether the conduct at issue herein was pretext for true discriminatory conduct. *See, e.g., Thomas v. WMATA*, 907 F. Supp. 2d 144, 149 (D.D.C. 2012) (denying summary judgment because "it is difficult (if not impossible) for there not to be a question of fact as to what actually motivated them."). Accordingly, Defendant's Motion for Summary Judgment should be denied.

B. **PLAINTIFF HAS ESTABLISHED THAT THE AGENCY VIOLATED TITLE VII BY RETALIATING AGAINST PLAINTIFF BECAUSE OF DISCRIMINATION COMPLAINTS.**

Ms. Kennedy engaged in protected activity when she contacted the EEO office on March 18, 2014 to complain of the discriminatory actions Mr. Rhoads had taken against her since her promotion in May 2013. *See* ROI, pg. 38.  Specifically, she alleged that Mr. Rhoads and Mr. Watson had discriminated against her and subjected her to a hostile work environment because of her race. *See* id. at 40.  Consequently, Ms. Kennedy was detailed to a position downtown, a month

later was officially demoted and placed under the supervision of Ms. Ingrid Watson. *See* pg. 11 above. Ms. Watson is and was married to Mr. Watson, who was one of the named Responsible Management Officials in her EEO complaint. *See* pg. 12 above. According to Mr. Rhoads and Ms. Watson, Mr. Watson had found a place to reassign Ms. Kennedy. *See* pg. 11 above. These actions constitute retaliation as set forth below.

Indeed, Title VII of the Civil Rights Act of 1964 also forbids employers from retaliating against any individual because he or she has opposed any unlawful employment practice or because he or she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding based upon the employer's unlawful employment practice. See Section 2000-e(a); Title VII; Civil Rights Act. To establish a prima facie case of retaliation, a plaintiff must show: "1) that [s]he engaged in a statutorily protected activity; 2) that [s]he suffered a materially adverse action by his employer; and (3) that a causal link connects the two. *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012); *see also McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012) ("To prove unlawful retaliation, a plaintiff must show: (1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice."); *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007); *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005); *Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 650-51 (D.C. Cir. 2003); *Singletary v. District of Columbia*, 351 F.3d 519, 524 (D.C. Cir. 2003); *McKenna v. Weinberger*, 729 F.2d 783 (D.C. Cir. 1984). A statutorily protected activity includes filing formal EEOC complaints and complaining to human resources about the employer's discriminatory conduct. *Richardson v. Gutierrez*, 477 F. Supp. 2d 22, 27 (D.D.C. 2007) ("It is well settled that Title VII protects informal, as well as formal, complaints of discrimination."); *Bell v. Gonzales*, 398 F. Supp. 2d 78, 94 (D.D.C.

2005) ("Initiation of EEO counseling to explore whether an employee has a basis for alleging discrimination constitutes protected activity, even in the absence of an unequivocal allegation of discrimination."). A materially adverse action, in the retaliation context, is an action that "dissuades a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *Ginger v. District of Columbia*, 527 F.3d 1340, 1346 (D.C. Cir. 2008). Furthermore, causation is but-for causation, meaning the plaintiff must prove that the statutorily protected activity was a but-for cause of the employer's materially adverse action. *See Jones*, 557 F.3d at 678; *see also Rattigan v. Holder*, 982 F. Supp. 2d 69, 82 (D.D.C. 2013) ("[A] Title VII retaliation claim cannot rely on a mixed motive theory.").

Here, Ms. Kennedy engaged in protected activity by complaining of harassment and discrimination to her management officials on several occasions. Prior to the filing of her EEO complaint, she complained numerous times about the hostile conduct of Ms. Wiley. *See* SoF, generally, above. She complained to Mr. Rhoads, Mr. McFadden, Ms. Bolden, and Ms. Rucke. After she complained to Ms. Bolden and Ms. Rucke in January of 2014, Mr. Rhoads reported that he decided to remove her from her position. *See* Ex. 58, Rhoads Depo at 35. Suddenly, despite receiving a "Fully Satisfactory" rating in December, Mr. Rhoads had concerns regarding Plaintiff's performance. Ms. Kennedy kept pushing Mr. Rhoads to step in and take action against Ms. Wiley. On March 11, 2014, Ms. Kennedy thought she was attending a meeting to discuss Ms. Wiley's conduct. *See* SOF, ¶ 75. Instead, the meeting focused on her. After the meeting, Plaintiff requested that Ms. Wiley be reassigned. *See* SOF, ¶76. Shortly thereafter, on March 18, 2014, Ms. Kennedy filed her EEO complaint. In less than two weeks after Plaintiff requested Ms. Wiley to be transferred and one week after she filed her informal EEO complaint, Plaintiff was detailed downtown, not Ms. Wiley. *See* SOF, ¶78. By April 20, 2014, Ms. Kennedy was "reassigned" to

a GS-9 position with no promotion potential. *See* SOF, ¶94. She was given a document purportedly detailing every which way Ms. Kennedy as deficit as a supervisor. *See* Ex. 34. However, not only were the items untrue, conversely, Mr. Rhoads approved a within-grade increase only the day after she received the demotion notice. *See* Ex. 36.

Ms. Kennedy was reassigned to a position that reported to Ms. Watson, the wife of Mr. Watson, who was Ms. Kennedy's second line supervisor and Mr. Rhoads' supervisor. Mr. Watson was also a named Responsible Management Official in Ms. Kennedy's informal EEO complaint. During this time, Ms. Kennedy requested to attend the Blacks in Government conference and was initially on the list of individuals selected to go. *See* SOF, ¶92-93. On April 28, 2014, Plaintiff submitted her justification to Ms. Watson for attending the conference as requested. *See* SOF, ¶105.

On July 10, 2014, approximately 42 days after Ms. Kennedy filed her formal EEO complaint, Ms. Watson denied Ms. Kennedy's request to attend the conference. *See* SOF, ¶107. Ms. Watson provided no valid reason why Ms. Kennedy was not allowed to go. During her deposition, she stated, "It was not clear to me from her justification how her attendance would benefit her own career goals. She and I had not had a discussion about her career goals since she was new, and it wasn't clear how her attendance would benefit her own career goals and how it would benefit the agency." *See* Ex. 62, Watson Depo at 236. However, Ms. Watson admitted that she did not discuss this alleged reasoning with Ms. Kennedy until after the deadline. *Id*.

Furthermore, when the topic of the conference came up in a meeting the next day, Ms. Watson referenced Ms. Kennedy's EEO complaint. *See* SOF, ¶109. Without any real justification for denying her request and given the close proximity to the protected activity, retaliation is the only rationally sound explanation for Ms. Watson's decision.

Additionally, Ms. Watson continued to deny Ms. Kennedy training opportunities, such as the request to attend 2014 Federal Interagency Diversity Partnership Training Day, scheduled for November 12, 2014. *See* Ex. 46. Ms. Watson stated that she "got the impression that Ms. Kennedy was not interested in training at that time before she joined [her], that there wasn't any training that she had identified as being interested in." *See* Ex. 62, Watson Depo at 242. As the record indicates, that is just simply not a statement based in reality.

Therefore, Plaintiff has established a *prima facie* case of retaliation and has demonstrated that the Agency failed to meet its burden of establishing a legitimate, non-discriminatory reason for its actions. Finally, genuine issues of material fact are abundant, requiring that summary judgement be dismissed.

## C. <u>PLAINTIFF HAS ESTABLISHED THAT THE AGENCY VIOLATED TITLE VII BY SUBJECTING HER TO A HOSTILE WORK ENVIRONMENT</u>

From the time Ms. Kennedy started working in her new supervisory position, Ms. Kennedy was subjected to a hostile work environment. The United States Supreme Court in *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986), the Supreme Court recognized that a plaintiff may establish a violation of Title VII by proving that discrimination has created a hostile or abusive working environment. Under Title VII, "a plaintiff may establish a violation of Title VII by proving that discrimination has created a hostile or abusive work environment." *Vinson*, 477 U.S. at 66. A hostile environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to create an abusive working environment." *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, (1993). Thus, to prevail on a Title VII claim that discrimination has created a hostile workplace; a plaintiff must show that there is '(1) unwelcome conduct; (2) that is based on the protected basis (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work

environment.' *See Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998); *Mosby–Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir.2010).

To make out a hostile work environment claim, a plaintiff must demonstrate that the "workplace is permeated with 'discriminatory intimidation, ridicule, and insult'" and that this behavior is "'sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), *quoting Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Examining such a claim requires both a subjective and an objective inquiry: no violation is present "if the victim does not subjectively perceive the environment to be abusive" or if the conduct "is not severe or pervasive enough to create an objectively hostile or abusive work environment." *Id.* at 21–22, 114 S.Ct. 367. "To determine whether a hostile work environment exists, [courts] look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), *quoting Harris*, 510 U.S. at 23, 114 S.Ct. 367 ; *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C.Cir.2008). "Severity and pervasiveness are complementary factors and often go hand-in-hand, but a hostile work [80 F.Supp.3d 227] environment claim could be satisfied with one or the other." *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C.Cir.2014). The Supreme Court has made clear that the conduct must be so extreme "to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). This "ensure[s] that Title VII does not become a general civility code" that would involve the courts in policing "the ordinary

tribulations of the workplace." *Id.* Assuming that a hostile work environment claim can be brought under the ADEA, the same standard would apply. *See, e.g., Singleton v. Potter*, 402 F.Supp.2d 12, 41 (D.D.C.2005).

Here, the main actor was not just the management officials to which she complained, but also the subordinate employee who wrote nasty e-mails and yelled at her in meeting. An employee can be subjected to a hostile work environment by a subordinate. In *Lyles v. D.C.,* the Court held:

> An employer may be held liable for the harassment of a supervisor by a subordinate if the employer knew or should have known of the harassment and failed to implement prompt and appropriate action; but an employer will not be liable for the sexual harassment of a supervisor by a subordinate where the supervisor-plaintiff had the ability to stop the harassment and failed to do so. The Court finds this standard to be the most appropriate because it empowers the supervisor to remove or reprimand the subordinate-harasser, while ensuring that if the supervisor is unable to address the harassment and reports the subordinate-harasser to her supervisors, i.e., takes action to stop the harassment, and it is unsuccessful or the employer resists such actions, the employer will still be liable for allowing the hostile work environment to persist despite being on notice of the problem. Other courts confronting this issue have developed a similar standard, albeit less explicitly.

*Lyles v. D.C.*, 65 F.Supp. 3d 181, 192, 2014 U.S. Dist. LEXIS 119420, *24-26. Ms. Kennedy attempted to notify the Agency of Ms. Wiley's behavior and was flatly ignored. Ms. Kennedy attempted to have Ms. Wiley's conduct addressed with a suspension, but was forced to reduce it to a letter of caution. Finally, Ms. Kennedy attempted to have Ms. Wiley reassigned, but instead, she was reassigned out of her supervisory position.

In addition, the Agency subjected Ms. Kennedy to a hostile work environment what she was assigned to supervise a known trouble employee without any guidance or support; the Agency failing to investigate or take any action after Plaintiff complained about Ms. Wiley's actions; Plaintiff's supervisors made harassing and demeaning comments to her to intimidate her against filing an EEO complaint; Plaintiff's supervisor inferred that Plaintiff should start looking for

another job; the Agency denied Plaintiff's request to attend the Blacks in Government conference; Plaintiff was reassigned to a lower grade position with no promotion potential; management removed Plaintiff from her supervisory position prior to her one-year probationary period; and Plaintiff's supervisors failed to provide Plaintiff with the requested training and guidance in her supervisory position, which created a hostile and abusive work environment. Over the span of approximately a year, Ms. Kennedy had to constantly face an employee who was hostile, rude, abrasive, and absurdly defiant. When Ms. Kennedy complained about this employee, instead of assisting, the Agency attempted to quiet Ms. Kennedy's efforts to correct Ms. Wiley's behavior. Mr. Rhoads ignored training requests and requests for guidance on dealing with Ms. Wiley.

Viewing the facts in the light most favorable to the Plaintiff, as the Court must do at this juncture, the Court should find that Plaintiff has established a viable hostile work environment claim as a matter of law. Accordingly, the Defendant's Motion for Summary Judgment should be denied under *Adickes, and Anderson supra*, as well as other pertinent federal and state law, since there are material facts in dispute and a reasonable fact finder could determine that Defendant was liable for its unlawful conduct in violation of Title VII.

## V.     CONCLUSION

Based upon the reasons set forth herein, and, accepting the evidence in this case in a light most favorable to the Plaintiff and accepting all reasonable inferences as true, and in the interest of justice, Ms. Kennedy respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment and allow this matter to proceed to a jury trial on the material disputes in this case.

November 20, 2018                    Respectfully submitted,


By:    /s/

Donna Williams Rucker (D.C. Bar No. 446713)
DEPUTY MANAGING PARTNER

Tully Rinckey, PLLC
815 Connecticut Ave., N.W.,
Suite 720
Washington, DC 20006
(202) 787-1900
drucker@fedattorney.com
*Attorney for Plaintiff*

# INDEX OF EXHIBITS

Exhibit 1 – E-Mail between E. Longen and L. Wiley

Exhibit 2 – USA Jobs Posting for Supervisory Resource Management Specialist

Exhibit 3 – Kennedy SF-50, dated June 16, 2013

Exhibit 4 – Kennedy Request for Personnel Action, dated June 11, 2013

Exhibit 5 – E-Mail from M. Rhoads, dated June 25, 2013

Exhibit 6 – E-Mail responding to M. Rhoads' E-mail, dated June 25, 2013

Exhibit 7 – E-Mail from M. Rhoads, dated July 1, 2013

Exhibit 8 – E-Mail from I. Watson regarding job fairs, dated July 22, 2014

Exhibit 9 – E-Mail from Kennedy to McFadden re: Wiley, dated August 7, 2013

Exhibit 10 – E-Mail from Kennedy to discuss Wiley, dated July 2, 2013

Exhibit 11 – Calendar event scheduling Administrative Processes Training, dated Aug. 12, 2013

Exhibit 12 – E-Mail from Kennedy, dated August 27, 2013

Exhibit 13 – E-Mail from M. Rhoads responding to Wiley, dated Aug. 28, 2013

Exhibit 14 – E-Mail from McFadden re: T&A vs Turnstile Info, dated Sept. 4, 2013

Exhibit 15 – E-Mail from Wiley re: Continued Harassment & Bullying by Juanita Kennedy, dated Sept. 10, 2013

Exhibit 16 – E-Mail from M. Rhoads, re: Wiley Suspension, dated Sept. 19, 2013

Exhibit 17 – E-Mail from McFadden re: The letter, dated Sept. 25, 2013

Exhibit 18 – Calendar event with Kennedy, Rhoads, and Wiley, dated Oct. 3, 2013

Exhibit 19 – Official Letter of Caution, dated Oct. 3, 2013

Exhibit 20 – E-Mail from Kennedy responding to tasks, dated Oct. 10, 2013

Exhibit 21 – Performance Appraisal, dated Dec. 18, 2013

Exhibit 22 – Performance Appraisal, dated Dec. 18, 2013, version 2

Exhibit 23 – Calendar event between Kennedy and Bolden, dated Jan. 13, 2014

Exhibit 24 – E-Mail from Kennedy re: Lynn Wileys Timesheet, dated Jan. 16, 2014

Exhibit 25 – E-Mail from Kennedy to Rucke re: Events with Lynn Wiley, dated Jan. 16, 2014

Exhibit 26 – E-Mail from Kennedy to McFadden, dated Jan. 28, 2014

Exhibit 27 – E-Mail from Bolden re: Wiley's E-mail to Kennedy, dated March 4, 2014

Exhibit 28 – E-Mail from Kennedy to Rhoads, dated March 10, 2014

Exhibit 29 – E-Mail from M. Rhoads to Kennedy, dated April 9, 2014

Exhibit 30 – E-Mail from Kennedy requesting to attend training, dated March 11, 2014

Exhibit 31 – E-Mail from Kennedy to Rhoads, dated March 11, 2014

Exhibit 32 – Cancelled Mid-Year review with Rhoads, dated March 28, 2014

Exhibit 33 – Agenda from April 10, 2013 meeting

Exhibit 34 – Notice of Reassignment to a Non-Supervisory Position during Supervisory Probationary Period, dated April 16, 2014

Exhibit 35 – Final Report – Supervisory Resource Management, dated May 31, 2013

Exhibit 36 – Within-Grade Increase Record, dated April 21, 2014

Exhibit 37 – Kennedy SF-50, dated April 21, 2014

Exhibit 38 – E-Mail regarding meeting with M. Rhoads, dated April 21, 2014

Exhibit 39 – Contemporaneous notes from meeting on April 22, 2014

Exhibit 40 – E-Mails regarding justification for BIG Conference, dated April 28, 2014

**Exhibit 41 – Kennedy SF-50, Cash Award, dated June 5, 2014**
**Exhibit 42 – Position Description for Administrative Support Assistant**
**Exhibit 43 – E-Mails from I. Watson re: BIG Conference, dated June 30, 2014**
**Exhibit 44 – E-Mail following up meeting, dated July 21, 2014**
**Exhibit 45 – Request Approval to Attend a Training Event in Excess of $75,000, dated July 14, 2014**
**Exhibit 46 – E-Mail from I. Watson re: training, dated Nov. 4, 2014**
**Exhibit 47 – Collection of E-Mails regarding Conduct issues with Wiley, various dates**
**Exhibit 48 – Collection of Calendar Events and E-Mails showing hindrance to performing duties, various dates**
**Exhibit 49 – E-Mail from M. Rhoads requesting Turnstile Audit, dated July 16, 2013**
**Exhibit 50 – E-Mail from Kennedy to Wiley, dated Aug. 14, 2013**
**Exhibit 51 – E-Mail from M. Rhoads re: Background on Wiley T&A Issue, dated Aug. 26, 2013**
**Exhibit 52 – E-Mail Notification of Wiley's filing of EEO complaint, dated Sept. 3, 2013**
**Exhibit 53 – Handwritten Note from M. Rhoads**
**Exhibit 54 – E-Mail from Kennedy re: Corrections needed for Pay Period 26, dated Jan. 27, 2014**
**Exhibit 55 – E-Mail from Rucke re: reassigning probationary supervisor, dated Feb. 6, 2014**
**Exhibit 56 – E-Mail Compliment from Special Assistant to the Deputy Administrator, dated March 24, 2016**
**Exhibit 57 – Letter to Secretary from Congress, dated Nov. 21, 2016**
**Exhibit 58 – Excerpts from Deposition Transcript of M. Rhoads, dated June 5, 2018**
**Exhibit 59 – Excerpts from Deposition Transcript of E. McFadden, dated June 6, 2018**
**Exhibit 60 – Excerpts from Deposition Transcript of L. Cole, dated June 8, 2018**
**Exhibit 61 – Excerpts from Deposition Transcript of A. Dowdy, dated June 8, 2018**
**Exhibit 62 – Excerpts from Deposition Transcript of I. Watson, dated June 8, 2018**
**Exhibit 63 – Excerpts from Deposition Transcript of Plaintiff, dated July 10, 2018**
**Exhibit 64 – E-Mail from M. Rhoads, dated April 16, 2014**
**Exhibit 65 – E-Mail from Kennedy, re: Negative Comments outloud in the office, dated March 31, 2013**
**Exhibit 66 – E-Mail from E. Pullins, dated Nov. 6, 2015**
**Exhibit 67 – E-Mail from Kennedy, dated June 28, 2013**
**Exhibit 68 – E-Mail from M. Rhoads re: vacation, dated July 26, 2013**
**Exhibit 69 – Sharepoint US Bank Credit Card Cancellations**
**Exhibit 70 – E-Mail from Kennedy re: Summary of Activities FY 2013, dated Aug. 14, 2013**
**Exhibit 71 – E-Mail from Kennedy re: No problem, dated May 26, 2015**
**Exhibit 72 – Plaintiff's Affidavit, dated Nov. 20, 2018**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Opposition to Defendant's Motion for Summary Judgment, Plaintiff's Statement of Facts in Dispute, the exhibits, and the attached Order was served this 20th day of November 2018, was sent via the Court's Electronic Filing System upon the following:

W. Mark Nebeker
DC Bar #396739
Assistant United States Attorney
555 4th Street, NW
Washington, D.C. 20530
Mark.nebeker@usdoj.gov

___/s/_____
Donna Rucker